UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CYNTHIA K. AUSBY,

                    Plaintiff,

-vs-                                Case No.  5:05-cv-460-Oc-10GRJ

STATE OF FLORIDA, DEPARTMENT OF
CHILDREN & FAMILIES,

                    Defendant.

_____

# **O R D E R**

This case is before the Court for consideration of the Defendant State of Florida Department of Children And Families' Motion for Summary Judgment (Doc. 24).  The Plaintiff has filed a response in opposition, (Doc. 27), and the motion is now ripe for disposition.  Upon due consideration, the Court concludes that the motion for summary judgment is due to be granted in part and denied in part.

## **Factual Background**

The Plaintiff, Cynthia K. Ausby, is an African-American female and has worked in various positions for the Defendant, the State of Florida Department of Children & Families ("DCF"), since 1989.  On October 3, 2003, DCF notified Ausby in writing that her current position as Family Service Specialist in Lake County, Florida was scheduled for elimination effective March 25, 2004, as part of DCF's workforce reduction plan.[1]  At that time, Ausby

_____

[1]The workforce reduction plan was part of a statewide initiative implemented under the
(continued...)

became an "adversely affected employee" entitled to various rights under the reduction plan, including the right to a "first interview" for any vacant position within DCF for which Ausby was qualified.

On February 19, 2004, DCF sent Ausby a second notification letter reminding her that her current position would be eliminated effective March 25, 2004.  Ausby applied for the position of Child Protective Investigator with the Protective Services and Foster Care Division of DCF in Lake County, Florida, on March 25, 2004, and was hired that same day. Ausby remained in that position until November 16, 2004, at which time she transferred to the position of Human Services Counselor III with the Adult and Agency Division of DCF in Marion County, Florida.  Ausby continued to work as a Human Services Counselor until her termination on March 17, 2005.

From November 3, 2003 to late February or early March 2004, Ausby's immediate supervisor was Phoebe Cooper.  The management hierarchy becomes a bit murky after Ausby transferred to the Child Protective Investigator position on March 25th.  From mid-March to approximately the end of May 2004, Sherrie Hamilton was Ausby's immediate supervisor.  At some point during this same time period, Darnell Stewart, DCF Operation

---

[1](...continued)

direction of then-Governor Jeb Bush to reduce the size of state government.  Employees whose positions were eliminated as part of the reduction were deemed "adversely affected" and were afforded certain rights, including the right to a "first interview" for any vacant position within the employee's agency for which the employee was qualified.  The right of "first interview" was limited only to the first interview granted by the agency and there was no continuing obligation to offer additional interviews for other positions.  Once the employee accepted another position, the employee was no longer considered "adversely affected" and no longer had any rights under the workforce reduction plan.

Program Administrator, also became one of Ausby's supervisors, overlapping for at least a short period with Hamilton.  It appears that Stewart became Ausby's sole immediate supervisor in late May or early June 2004 and remained Ausby's supervisor until Ausby transferred to the Human Services Counselor position in November 2004.  The identity of Ausby's immediate supervisor from November 2004 until her termination is not specified in the record.

From July of 2003 to April of 2004, Bill D'Auito was the District Operations Manager and Ausby's second-level supervisor.  D'Auito moved to the position of Marion County Manager in April of 2004, and apparently ceased supervising Ausby in any capacity from that point forward.

I.      Applications for Other Positions

Between October of 2003 and the Summer of 2004, Ausby applied for 13 other positions within DCF.  Within several of the positions there were multiple vacancies, leading Ausby to speculate that she actually applied for upwards of 23 different positions, many of which were promotions.  Ausby alleges that she was not interviewed or hired for any of these positions because of her race.  The evidence before the Court, and Ausby's motion papers, however, focus solely on her unsuccessful applications for one Child Protective Investigator Supervisor position, four Operations Review Specialist positions, and one Adult Protective Investigator position.

Ausby applied for the Child Protective Investigator Supervisor position in late 2003. Phoebe Cooper hired Sherrie Hamilton, a white female, for the position in January 2004.[2] At the time of the hiring decision, Ausby had approximately eleven years of experience as a Child Protective Investigator, but no supervisory experience. Hamilton, however, had no experience as an Child Protective Investigator, but was certified as an Investigator and had two years prior supervisory experience in her position as DCF Family Services Supervisor. Although Cooper does not recall Ausby applying for this position, she testified at her deposition that Ausby would not have been qualified for the Supervisor position because Ausby did not have good people skills or team-building skills.[3]

Ausby applied for four vacant Operations Review Specialist positions in Sumter County, Florida, on January 14, 2004. On January 28, 2004, a three-person panel interviewed Ausby, along with four other persons, for the positions. Syliva Smoot, a white female, was in charge of the hiring decisions. The interview panel scored each applicant based on three criteria: letter writing, data analysis, and interview presentation, and Smoot hired the four highest scoring applicants. Although Ausby scored relatively high on the writing and analysis criteria, she was the lowest scorer on the interview portion. As a result, Ausby was the lowest overall scorer out of the five (5) total applicants - by one point

---

[2]Cooper had worked with Ausby intermittently for several years, dating back to 1999, and had personally observed Ausby's job performance on numerous occasions. Both Cooper and Ausby agree that their personalities occasionally clashed at work.

[3] Cooper had hired two other Child Protective Investigator Supervisors in late 2003 - Genet Stewart and Charles Scruggs - both of whom are African-American.

- and was not hired for any of the four positions.  The positions instead were filled by three white individuals and Krysia Griffin, an African-American female.

In the summer of 2004, Ausby applied for the position of Adult Protective Investigator in Marion County.[4]  Yvonne Colley interviewed Ausby for the position and, along with Bill D'Auito, then-Marion County Manager, determined that Ausby was not the most qualified person.  Instead, they selected Karen Butler, a white female.  In his deposition, D'Auito stated that he chose Butler because she had experience in the adult services program and was the strongest fit for the position, and because Ausby did not possess strong interpersonal skills.  D'Auito also took into consideration a 2003 Written Reprimand Ausby received for failure to protect a computer password.[5]  Ausby contends that she was the most qualified for the position based on her eleven years experience as a Child Protective Investigator, whereas she believes Butler had only worked for DCF since January 2004.

At some point in early 2004, Ausby spoke with Darnell Stewart about why Ausby was not receiving any of these positions.[6]  According to Ausby, Stewart stated that DCF would not promote her or transfer her into any position other than the Child Protective Investigator

---

[4]On March 23, 2004, Ausby sent an email to D'Auito expressing interest in an Operations Management Consultant II position that was vacant in Marion County.  D'Auito does not recall receiving the email or discussing the position with Ausby, and did not interview her for the position. D'Auito instead hired Carla Jones, an African-American female, for the vacant position.

[5]The 2003 Written Reprimand was signed by one of Ausby's prior supervisors, Tony White, and Ausby does not consider the Reprimand to be part of her claims against DCF.

[6]It is not clear from the record whether Stewart was Ausby's supervisor at the time of this alleged communication.

position, and that Ausby needed to "lay low and humble herself" and in a year's time she would be considered for promotion.  There was no mention of Ausby's race, her complaint to the Equal Employment Opportunity Commission ("EEOC") or any other protected activity.

II.     Alleged Instances of Retaliation

On March 8, 2004, just over two weeks before Ausby was hired for the Child Protective Investigator position, Ausby filed a charge with the EEOC alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").   In the charge, Ausby contends that she was not interviewed or placed into fifteen different positions that she was qualified for because she is black, and that she was being retaliated against because she was listed as a witness in another discrimination complaint filed against DCF.[7]

In her Complaint before this Court, Ausby alleges that she was retaliated against for filing her March 8, 2004 EEOC charge in four ways: (1) she received a lower than normal performance evaluation; (2) her supervisors significantly increased her caseload; (3) she received several letters of reprimand; and (4) she was terminated.

---

[7]Ausby's allegations of retaliation set forth in her March 8, 2004 charge concerning her identity as a witness in another employee's discrimination complaint are not part of this case. Instead, Ausby has limited her retaliation claim, and the evidence submitted to the Court, to alleged instances of retaliation based on her EEOC charge alone.

In March of 2004, Ausby received a draft performance evaluation for the time period covering March 31, 2003 to March 31, 2004.[8]   The evaluation, which was prepared by Ausby's former supervisor Phoebe Cooper, listed Ausby's overall performance rating as 2.88, a below average score.[9]   Ausby refused to accept the evaluation and did not sign it. Instead, she complained to Darnell Stewart who prepared a corrected version of the evaluation with an increased overall rating of 3.60.   The last page of the corrected evaluation, immediately above the signature lines, states that Ausby's "behavior is often perceived by her co-workers as inappropriate and often do [sic] not model and reinforce the agency's values."   Ausby accepted the corrected evaluation and signed it on March 30, 2004.[10]   The lower evaluation was never finalized and is not part of Ausby's personnel file.

Between April 2004 and early June 2004 Ausby contends that she was assigned a disproportionately higher number of case assignments.   Cases are typically assigned on a "round robin rotation" and are distributed equitably among Investigators.   According to Ausby, however, during this time period, Sherrie Hamilton assigned Ausby 56 new cases,

---

[8]The evaluation submitted to the Court lists the time period as March 31, 2002 to March 31, 2003, but the Parties do not dispute that this draft evaluation actually covers the 2003-2004 time period and was provided to Ausby at some point in March 2004.

[9]Employees are rated on a scale of 1 to 5 with 1 being the lowest.   A score of 3 represents an employee whose performance consistently achieves expectations, a score of 4 represents an employee whose performance often exceeds expectations, and a score of 5 represents an employee whose performance far exceeds expectations.   Employees who receive a score below a 3.0 are subjected to a six-month interim evaluation.

[10]The Parties have not provided the Court with all of Ausby's prior evaluations, however, it does not appear that she has ever received a below average overall rating, and for the 2001-2002 period, she received an overall rating of 4.62.

she became the primary investigator on another 6 cases, and an additional 14 cases were transferred to her as either out-of-town inquiries or home studies.  In contrast, the other four Child Protective Investigators were assigned between 21 and 39 cases during the same time period.  There is no evidence before the Court that this increased workload resulted in Ausby working beyond her regularly scheduled work hours, or that she was not compensated via overtime or otherwise in the event she did work beyond her normal work schedule.

In May of 2004, Ausby received several "Memos of Counseling" from Hamilton, addressing Ausby's failure to comply with DCF policy and close her cases within 60 days from assignment.  On May 10, 2004, Hamilton sent Ausby a Memo of Counseling discussing Ausby's failure to close case file # 2004-327797 within the 60-day period.  The Memo stated that Hamilton was available to provide assistance should Ausby request it, and that a copy of the Memo would be placed in Ausby's personnel file.  Ausby refused to sign the Memo, and instead notified Hamilton that she intended to prepare a rebuttal.

On May 13, 2004, Sherrie Hamilton sent Ausby another Memo of Counseling concerning Ausby's failure to close case file # 2004-331749 within the 60-day period.  Again, the Memo offered assistance to Ausby, and stated that the Memo would be placed in Ausby's personnel file.  Ausby also refused to sign this Memo, stating that she intended to submit a rebuttal.

Sherrie Hamilton sent Ausby a third Memo of Counseling on May 21, 2004, discussing Ausby's failure to close another five cases within the 60-day period, and noting

that other cases had to be reassigned due to Ausby's inability to comply with the 60-day deadline.  The Memo further stated that Hamilton would talk to Darnell Stewart and another employee about possibly reassigning more of Ausby's cases, and mentioned Ausby's failure to attend a mandatory meeting that day.  The Memo concluded by stating that a copy would be placed in Ausby's personnel file.  Again, Ausby refused to sign the Memo, and expressed her intention to submit a rebuttal.[11]

On May 26, 2004, Hamilton prepared a Written Reprimand detailing Ausby's refusal to include certain information and documentation in a case file despite Hamilton's specific and repeated instructions to do so, and Ausby's failure to close the file within 60 days.  The Reprimand also accused Ausby of undermining Hamilton's authority and stated that if Ausby's insubordinate behavior continued, further disciplinary action would follow.  Ausby refused to sign the Reprimand, and a copy was placed in her personnel file.[12]

Although copies of each Memo and Reprimand became part of Ausby's personnel file, there is no evidence that these documents had any impact on any term or condition

---

[11]It is unclear from the record whether Ausby ever submitted a rebuttal to any of these Memos.

[12]Ausby contends that she did not receive copies of the May 13, 2004 or May 21, 2004 Memos of Counseling or the May 26, 2004 Written Reprimand until June 8, 2004.  This time lapse does not appear to be of any significance, as it is undisputed that she did, in fact, receive copies of the Memos shortly after their creation.

of Ausby's employment, and there is no evidence that Ausby ever suffered any further discipline until her termination in March of 2005.[13]

III.    Ausby's Termination

When Ausby transferred to the Human Services Counselor III position on November 16, 2004, DCF placed her on a mandatory "new employee" probationary period.  Ausby was aware that if she did not satisfactorily complete the probationary period, she could be subject to termination.

At some time before Ausby transferred into this position, she filed a union grievance concerning the May 26, 2004 Written Reprimand from Hamilton.[14]  In early November of 2004, Ausby forwarded to her union representative, Michael Temple, several documents which she claimed supported her grievance.  The documents, however, contained confidential information, including criminal history checks with the names, dates of birth, social security numbers, race and gender of two DCF clients, a Lake County Sheriff's Office Incident Report, handwritten notes with names and case information, and other papers containing names, dates of birth and social security numbers of DCF clients.  Ausby provided these documents to her union representative without first redacting this

---

[13]Both D'Auito and Hamilton testified that Memos of Counseling do not constitute formal disciplinary action under DCF policies.

[14]Ausby has not provided the Court with a copy of the grievance or any other evidence relating to the grievance itself.

10

confidential information, and her union representative then forwarded the unredacted material to DCF Central Office Human Resources Manager Richard T. Runkle.

Upon receiving these unredacted documents, Runkle requested the DCF Office of Inspector General conduct an investigation to determine whether Ausby released confidential information to unauthorized persons in violation of DCF policy.  The investigator found that Ausby did, in fact, release the confidential information to Temple, and that she directed Temple to forward the documents to Runkle as part of her grievance process.  Ausby admitted during the investigation that she did not know that the documents had not been redacted, and that she thought Temple was authorized to view the confidential information by virtue of his employment with the State of Florida.

Based on this investigation, DCF concluded that Ausby had violated confidentiality rules and, therefore, did not satisfactorily complete her probationary period.  As a result, DCF terminated Ausby's employment effective March 17, 2005.  The letter notifying Ausby of her termination was signed by Don Thomas, then-DCF District Administrator for District 13, which encompassed Marion County.  There is no evidence in the record establishing, or even creating an issue of fact, as to whether Thomas was aware of Ausby's EEOC charge at the time of her termination.[15]

---

[15]In her deposition, Ausby states that she complained to Don Thomas between January and April of 2004 about her failure to obtain other positions.  Ausby made these complaints through her union representative as part of a grievance process in an attempt to exercise her bumping rights; there is no evidence that she ever mentioned racial discrimination, her EEOC charge, or retaliation to Thomas at that, or any other time.

## Procedural History

On November 10, 2005, Ausby filed a three-count Complaint against DCF alleging claims of race-based discrimination and retaliation in violation of Title VII, (Counts I and II), and a claim of disability discrimination and failure to accommodate in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (Count III).  (Doc. 1).  On January 22, 2007, the Court granted the Parties' motion to stay all proceedings in order to allow Ausby to pursue arbitration through her union grievance procedures.  (Doc. 8).  On October 9, 2007, the Court lifted the stay, (Doc. 15), and provided the Parties with an additional limited discovery period.  (Doc. 17).

On March 28, 2008, Ausby moved to dismiss her disability discrimination claim, (Doc. 22), which the Court granted on April 2, 2008.  (Doc. 26).  Accordingly, the only claims remaining in this case are Ausby's Title VII claims for discrimination and retaliation.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in

Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

### Discussion

DCF seeks summary judgment in its favor on both remaining claims.  DCF contends that Ausby has failed to establish a *prima facie* case, and that she has failed to meet her ultimate burden of persuasion that DCF's non-discriminatory and non-retaliatory reasons for its actions were pretextual.

I.    Count I - The Failure to Promote Claim

Ausby's Title VII discrimination claim focuses on her failure to receive any of the approximately 23 promotions she applied for, allegedly on the basis of her race.  In order to prove such a claim, Ausby must establish that: (1) she is a member of a protected class; (2) she was qualified for each position at issue; (3) despite her qualifications, she was rejected for the positions; and (4) the positions were filled with persons outside the protected class who were equally or less qualified.  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089

(11th Cir. 2004); Walker v. Morthram, 158 F.3d 1177, 1186-87 (11th Cir. 1998).  Once

Ausby establishes a *prima facie* case, the burden shifts to DCF to articulate a non-

discriminatory reason for its employment action.   Springer v. Convergys Customer

Management Group, 509 F.3d 1344, 1347 (11th Cir. 2007).   DCF's burden is one of

production, not persuasion; it "can involve no credibility assessment."   Reeves v.

Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (quoting St. Mary's Honor

Center v. Hicks, 509 U.S. 502, 509 (1993)).

Despite this shift of the evidentiary burdens, the "ultimate burden of persuading the

trier of fact that the defendant intentionally discriminated against the plaintiff remains at all

times with the plaintiff."  Reeves, 530 U.S. at 143 (quoting Texas Dept. Of Community

Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  To satisfy this burden, Ausby may "prove

by a preponderance of the evidence that the legitimate reasons offered by the defendant

were not its true reasons, but were a pretext for discrimination."  Id.   Ausby can meet this

burden by pointing out "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its actions."  Cooper v.

Southern Co., 390 F.3d 695, 725 (11th Cir. 2004).  And, the trier of fact "may still consider

the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn

therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  Reeves,

530 U.S. at 143 (quoting Burdine, 450 U.S. at 255, n. 10).

Although Ausby alleges in her Complaint and her opposition that she applied for over

23 positions, she has only presented argument and evidence relating to six of them - the

Child Protective Investigator Supervisor position, the four Operations Review Specialist Positions, and the Adult Protective Investigator Position.[16]  The Court will therefore limit its analysis to these six positions.

Based on the available record evidence, the Court concludes that Ausby has established her *prima facie* case for five of these six positions.[17]  There is no dispute that Ausby satisfied the first prong - she is a member of a protected class.  There is also no real dispute as to the last two prongs of Ausby's *prima facie* case: she was rejected for each position, and in five of the six positions, DCF selected an arguably equally or less qualified person outside of Ausby's protected class.[18]  As to the second prong, however, neither side has submitted any evidence - aside from Ausby's own personal opinion - demonstrating whether or not Ausby was qualified for any of these positions.  The Court does not even

---

[16]Further contradicting Ausby's claims as to how many positions she applied for is an attachment to her Affidavit listing only <u>thirteen</u> positions she applied for between January 7, 2004 and June 9, 2004.  However, aside from the Operations Review Specialist and Child Protective Investigator Supervisor positions, Ausby has not provided any evidence explaining how the denial of her applications could constitute discrimination - there is no evidence that a non-black person was hired for any of the vacancies and, if so, why.  Instead, there is evidence that one position was cancelled, and Ausby admitted at her deposition that her failure to obtain three other positions had nothing to do with racial discrimination.

[17]Ausby cannot establish the fourth prong of her *prima facie* case and therefore cannot proceed against DCF with respect to the Operations Review Specialist position that was filled by Krysia Griffin, an African-American female.

[18]Other than the one position filled by Krysia Griffin, DCF has not presented any argument challenging Ausby's *prima facie* case on the five remaining positions.  DCF instead focuses on the workforce reduction plan and contends that, under the plan, Ausby was not entitled to an interview or promotion once she accepted the Child Protective Investigator position in March 2004.  Whether or not Ausby was entitled to an interview under the terms of a state reduction in force plan has no bearing on whether Ausby was denied a promotion on the basis of her race, and DCF has not presented any legal authority to persuade the Court otherwise.

have a copy of the job descriptions for the positions.  Nevertheless, in the absence of such evidence, and in light of the fact that the Court must take all factual inferences in the light most favorable to Ausby, the Court finds, for summary judgment purposes only, that Ausby was qualified for each position, and, therefore, has established her *prima facie* case for these five positions.

When the evidentiary burden shifts to DCF, the Court finds that DCF has articulated legitimate, non-discriminatory reasons for not hiring Ausby.  For each position, DCF contends that Ausby was not the most qualified person because she had poor interpersonal skills, was not a team player, and did not interview well.  In an attempt to prove that this rationale is a pretext for DCF's intentional discrimination, Ausby argues that the reasons DCF has provided are based on purely subjective and amorphous factors, which could be attributable to race-based bias, and that DCF has not submitted any evidence establishing Ausby's deficiencies.  Ausby also points to her eleven years of experience as a Child Protective Investigator, as well as the fact that she would occasionally assist with second party reviews,[19] as proof that she was the more qualified person for each position.

To be sure, personal qualities such as the ability to work in a team and get along with co-workers are important skills and can legitimately form the basis for an employment

---

[19]A second party review occurs when another Investigator or member of management reviews a case file and provides a second opinion concerning the appropriate course of action that should be taken.

decision.  See  Denney v. City of Albany, 247 F.3d 1172, 1186 (11th Cir.2001).  However,

in this case, the Court finds that Ausby has pointed to several "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions" in DCF's stated reasons

such that there is a question of material fact on the issue of pretext.  For example, Ausby

correctly notes that there is no evidence in the record even suggesting that Ausby's

interpersonal skills were deficient in any way at the time the hiring decisions were made.

To the contrary, the only evidence the Court could find - the March 2004 performance

evaluation and the May 2004 Written Reprimand - were created after Ausby had applied

for and been rejected from all but one of the positions in question.  None of Ausby's

supervisors testified that they had counseled Ausby in the past about her ability to be a

team player, and none of the supervisors could point to any specific instances of

insubordination or poor people skills.  Moreover, Ausby had the lowest overall score on her

interviews for the Operations Review Specialist position by only one point - her scores in

all areas other than interview skills were substantially higher than most of her competitors.

This evidence could easily be interpreted either to show that Ausby was, in fact, the most

qualified person for each position she applied for, or at the very least, to establish the

existence of material issues of fact.

It is undisputed that the only reason Ausby was not hired for the five remaining

positions at issue is because DCF, through its supervisors, perceived Ausby to have poor

interpersonal skills and not be a team player.  The problem with this theory, as Ausby

points out, is that the only evidence to support it are the subjective personal opinions of

17

DCF's employees.   Although subjective rationales for employment decisions are not presumptively pretextual, in this case, where there is no other evidence to back up these rationales, in order to grant summary judgment for DCF the Court would be forced to give more weight to the opinions of DCF's employees, and to reject Ausby's opinions.   And, while the Court agrees that it is not in the business of second-guessing an employer's hiring decisions, the Court is also not in the business of making credibility determinations at the summary judgment stage.   Rather, such determinations are within the sole purview of the jury.

Summary judgment is therefore denied as to the Child Protective Investigator position, three of the Operations Review Specialist positions, and the Adult Protective Investigator position.   Summary judgment is granted as to the one Operations Review Specialist position filled by Krysia Griffin.

II.      Count II - The Retaliation Claim

In order to establish a *prima facie* claim of retaliation under Title VII, Ausby must prove that: (1) she participated in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment action.   Brown v. Snow, 440 F.3d 1259, 1266 (11th Cir. 2006); Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004); Reis v. Universal City Development Partners, Ltd., 442 F. Supp.2d 1238, 1252 (M.D. Fla. 2006). If Ausby can establish a *prima facie* case, the burden shifts to DCF to come forward with

a legitimate, non-retaliatory reason for the adverse employment action.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001); Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).  However, Ausby "bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct."  Oimsted, 141 F.3d at 1460.

There is no dispute that when Ausby filed her 2004 EEOC charge, she engaged in protected activity as defined by Title VII.  See 42 U.S.C. § 2000e-3.  Ausby points to four alleged instances of retaliation as a result of her charge: (1) her draft lower performance evaluation in 2002-2003; (2) an increase in her caseload; (3) the Memos of Counseling and Written Reprimand from Sherrie Hamilton regarding Ausby's backlog of cases; and (4) her termination.[20]   DCF argues that the first three instances do not rise to the level of an adverse employment action, and that there is no causal connection between Ausby's termination and her 2004 EEOC charge.

## A.   Adverse Employment Actions.

The United States Supreme Court has defined an "adverse employment action" to provide that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse" such that "it well might have dissuaded a reasonable

---

[20]In her response in opposition to summary judgement, Ausby, for the first time, argues that DCF's failure to promote her to the Adult Protective Investigator position "could be another issue as to whether retaliation occurred."  Ausby has never included this position, or the failure to promote to any position in general, as part of her retaliation claim in this Court, and she cannot amend her claim at this late date by virtue of a one-sentence reference in her summary judgment papers. Payne v. Ryder System, Inc. Long Term Disability Plan, 173 F.R.D. 537 (M.D. Fla. 1997).

worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted).  The Court emphasized that such adversity must be material as Title VII does not protect employees from "those petty slights or minor annoyances that often take place at work," but rather the Act protects employees "from retaliation that produces an injury or harm." Id.  The Eleventh Circuit has applied a similar standard for quite some time.  See Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1447, 1453 (11th Cir. 1998) (a plaintiff "must demonstrate that a reasonable person in his position would view the employment action in question as adverse" and "[a]ny adversity must be material"); Davis v.  Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir.  2001) ("It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment action."); Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) ("Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard.") (internal citations omitted).  See also Rutledge v. Suntrust Bank, 2008 WL 161796 at *2 (11th Cir. Jan. 18, 2008) ("The acts must be material and significant and not trivial.").

Applying these standards, the Court finds that Ausby's draft lower performance evaluation, which was corrected on March 30, 2004, cannot constitute an adverse employment action.  Simply put, Ausby never actually received a low or negative evaluation.  The evaluation which contained the overall rating of 2.88 was never finalized -

it was never signed or dated by either Ausby or her supervisors, and was never placed in her personnel file.  It is simply a piece of paper with no effect.  Rather, the corrected evaluation which was finalized and remains a part of Ausby's personnel file, contains an above average overall rating, and cannot reasonably be considered an adverse action.

Even if the Court were to deem the draft evaluation to have some effect, (or disregard Ausby's own statements and consider a score of 3.60 to be a low evaluation), Ausby has not provided any evidence establishing any negative impact as a result of either the draft or corrected evaluation.  Neither document ever resulted in any discipline, the denial of any promotions, raises, or other tangible job benefits, or impacted any term or condition of Ausby's employment.  Ausby also does not claim that the evaluation had a chilling effect on her desire to seek promotions.  Based on these undisputed facts, the Court concludes that Ausby has not produced evidence to establish that a "reasonable employee" would have found either the lower draft evaluation or the corrected March 30, 2004 evaluation "materially adverse."  See Brown, 440 F.3d 1259 (a lower score on employee's performance evaluation, without more, is not actionable under Title VII anti-retaliation provisions where employee failed to establish that the lower score led to a more tangible form of adverse action, such as ineligibility for promotional opportunities); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001) ("Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation under the ADA."); Davis, 245

F.3d at 1241 (criticisms of an employee's job performance that do not lead to tangible job consequences "will rarely form a permissible predicate for a Title VII suit").[21]

The alleged increase in Ausby's caseload also does not rise to the level of an adverse employment action because Ausby has not provided any evidence showing any harm based on the increased caseload. Rather, she merely speculates that receiving an increased caseload "would tend to dissuade an individual from pursuing a charge of discrimination." There is simply no evidence that Ausby's compensation, work hours, ability to seek and/or obtain promotions, or any other tangible term or condition of her employment were impacted in any material way.[22]  See, e.g., Davis, 245 F.3d at 1244 ("Changes in assignments or work related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work-hour change."); McGuire v. Miami-Dade County, 418 F. Supp.2d 1354, 1360 (S.D. Fla. 2006) ("increased workloads are not adverse employment actions but rather an ordinary tribulation of the workplace for which employees should expect to take responsibility."); Simmons v. Mobile

---

[21]Ausby also has not presented any evidence of pretext. Her only testimony was that she had a personality conflict with Cooper and that is why Cooper retaliated against her.

[22]For example, Ausby has not alleged or provided any evidence showing that she was forced to work beyond her regular work schedule to complete these additional cases, or that if she did work extra hours, she was not compensated for this extra work. To the contrary, Ausby testified at her deposition that her cases were removed from her office in March of 2004 after she provided her supervisor with a doctor's note explaining that Ausby suffered from carpal tunnel syndrome. The evidence submitted concerning Ausby's increased workload is also somewhat suspect - it consists of a single document which is a snapshot of the open cases for each investigator on a certain date. There is no explanation as to when the cases were assigned, who assigned them, or why.

Infirmary Medical Center, 391 F. Supp.2d 1124, 1135-36 (S. D. Ala. 2005) (alleged increase in workloads does not amount to an adverse employment action sufficient to establish a retaliation claim); MacLean v. City of St. Petersburg, 194 F. Supp.2d 1290, 1299 (M.D. Fla. 2002) (finding that additional workload placed on the plaintiff was not an adverse employment action because "[t]his Court's place is not to determine the workload that employers should place on its employees.").

The Court further finds that Ausby has not established a *prima facie* case with respect to the third alleged instance of retaliation - the Memos of Counseling and Written Reprimand - because they also do not constitute adverse employment actions.  The three Memos were not formal reprimands, but rather expressed concern and criticism by Sherrie Hamilton over Ausby's failure to timely review and close case files, and directed Ausby to contact Hamilton directly if Ausby needed further assistance (which Ausby in fact did). Other than expressing her opinion that the Memos were "questionable," Ausby has not presented any evidence showing how she suffered any tangible consequences from these Memos: she did not lose any compensation, she was not further disciplined, she was not denied any promotional opportunities, and she did not refrain from applying for any promotions on the basis of the Memos.  The impact of these Memos is therefore negligible; other than having a copy placed in Ausby's personnel file they are of no effect.[23]  See, e.g.

_____

[23]Even if the Court were to combine the issuance of these Memos with Ausby's alleged increased caseload, they would not rise to the level of an adverse employment action.  Ausby has not presented any evidence that would create an issue of fact as to how these events materially (continued...)

Davis, 245 F.3d at 1240 ("counseling memorandum" discussing job performance that is maintained in an employee's personnel file does not constitute adverse employment action).

For the same reasons, the Written Reprimand, which is part of DCF's formal disciplinary process, does not constitute an adverse employment action because Ausby has not provided any evidence showing what tangible impact the Reprimand had on any term or condition of her employment.  Davis, 245 F.3d at 1240-41.  See also Pelletier v. Reedy Creek Improvement Dist., Case No. 6:05-cv-637-Orl-18DAB; 2007 WL 1192410 at * 5 (M.D. Fla. April 23, 2007).

### B.    Causal Connection

The only alleged instance of retaliation that does constitute an adverse employment action for purposes of Title VII is Ausby's termination.  This portion of Ausby's claim fails because she has not provided any evidence sufficient to create a genuine issue of material fact with respect to the existence of a causal connection between her termination and her 2004 EEOC charge.

To establish a causal connection, Ausby must provide evidence that: (1) the decision makers responsible for the adverse employment action were aware of the protected activity; and (2) the adverse acts were at least somewhat related and in close temporal

---

[23](...continued)
impacted her job, or would dissuade a reasonable employee from pursuing a charge of discrimination.

proximity to the protected activity.  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); Gupta, 212 F.3d at 590.  Ausby has failed on both prongs.  She has not presented any evidence sufficient to create a material issue of fact as to whether any decision maker involved in Ausby's termination was aware of her EEOC charge at the time of Ausby's termination.  Instead, Ausby focuses on other former supervisors such as Hamilton, Stewart, Cooper, and D'Auito, none of whom supervised Ausby at the time of her termination or were involved in that decision.  Ausby has completely ignored the persons who were actually involved in the termination decision: Human Resources Manager Richard T. Runkle, District 13 Administrator Don Thomas, and Maryanne Rosenbaur,[24] and does not even suggest that these persons were aware of her EEOC charge.

Even if Ausby were able to establish that the decision-makers were aware of her EEOC charge, she cannot provide any evidence creating a causal connection.  Ausby filed her EEOC charge on March 8, 2004, and a copy was forwarded to the EEO Coordinator for District 13 on March 25, 2004.  Ausby's employment, however, was not terminated until March 17, 2005 - almost one year later.  Such a lengthy time gap, in the absence of any other causal evidence, cannot, by itself, establish that Ausby was fired because of her EEOC charge.  See, e.g., Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74

---

[24]It is somewhat unclear, but it appears that Rosenbaur was an upper-level Manager over Ausby's division at the time of her termination, and therefore one of her supervisors who was involved in the decision to terminate Ausby's employment.  Indeed, the record itself is somewhat unclear as to the identities of those individuals who were actually involved in Ausby's termination.  Ausby's immediate supervisor at the time of her firing is unknown, and the Court has been forced to cull through the existing record to identify the three individuals listed above.

(2001) (three-month interval between protected activity and adverse action insufficient to establish causation); <u>Drago v. Jenne</u>, 453 F.3d. 1301, 1307-08 (11th Cir.2006) (same); <u>Higdon</u>, 393 F.3d at 1221 (same); <u>Sierminski v. Transouth Fin. Corp.</u>, 216 F.3d 945, 951 (11th Cir.2000) (seven-month time period between protected activity and adverse employment action is too indirect to satisfy causal connection requirement).[25] The fact that Ausby received a transfer to the Human Services Coordinator position immediately after she filed her EEOC charge further militates against finding a causal link between her March 2004 charge and her March 2005 termination.[26]

---

[25]Even if the Court were to consider, as Ausby suggests, the date DCF initiated its investigation into Ausby's disclosure of confidential information, the eight-month gap between her EEOC charge and the November 23, 2004 investigation is still too large to create a causal connection.

[26]While she does not challenge the factual basis for her termination or deny violating DCF's confidentiality rules, Ausby argues that DCF's reason for terminating her employment is pretextual because Sherrie Hamilton previously disclosed the name of the child at issue in the May 26, 2004 Written Reprimand.  Because Hamilton already identified the child in the Reprimand, which then became part of Ausby's personnel file, Ausby argues that Hamilton engaged in the same conduct for which Ausby was fired, thereby demonstrating that Ausby's disclosure of any further confidential information concerning this child and the child's family could not properly be considered as grounds for termination.

This Circuit has previously held that "evidence demonstrating that the decision-maker engaged in the same policy violation proffered for an employee's termination is 'especially compelling' evidence of pretext." <u>Damon v. Fleming Supermarkets of Florida, Inc</u>, 196 F.3d 1354, 1365 (11th Cir. 1999) (quoting <u>Ross v. Rhodes Furniture, Inc.</u>, 146 F.3d 1286, 1291 (11th Cir. 1998)).  However, this is not such a case.  First, there is no evidence that Hamilton was one of the decision-makers involved in Ausby's termination.  Moreover, Hamilton included the child's name in the Written Reprimand as part of a block quote from a note that Ausby <u>herself wrote to Hamilton</u>.  This is not a situation where Hamilton independently and knowingly disclosed birth dates, social security numbers, names, criminal history records, or other such information to third parties outside of the Child Protective Services division.  The Court therefore finds that Ausby has not provided sufficient evidence to create a genuine issue of material fact as to whether DCF's rationale for termination Ausby's employment was pretext for retaliation.

Ausby's attempts to combine her termination with the other three alleged instances of retaliation will not save her claim.  Aside from the fact that Ausby presents no legal authority for a continuing violation theory of retaliation, it is undisputed that these incidents involved different supervisors, at different time periods, working in different counties and different divisions.  And, the first three alleged instances of retaliation, even when combined, still do not rise to the level of an adverse employment action.  In order to connect the dots in the manner Ausby suggests, the Court would have to find that there is at least a genuine issue of material fact implying that almost the entire management hierarchy at DCF acted together in a concerted effort to retaliate against Ausby.  The evidence simply does not support such a fanciful theory.  Summary judgment is therefore appropriate on the retaliation claim.

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED AND ADJUDGED that the Defendant State of Florida Department of Children and Families' Motion for Summary Judgment, (Doc. 24), is GRANTED IN PART AND DENIED IN PART.  Summary Judgment is granted in favor of the Defendant and against the Plaintiff as to the Plaintiff's retaliation claim as set forth in her Complaint (Count II), and as to the portion of the Plaintiff's failure to promote discrimination claim (Count I), relating to the Operations Review Specialist position filled by Krysia Griffin.  In all other respects, the motion for summary judgment is denied.  The Plaintiff may proceed on her failure to promote discrimination claim limited to

the five positions discussed in this Order: (1) the January 2004 Child Protective Investigator Supervisor position filled by Sherrie Hamilton; (2) the three January 2004 Operations Review Specialist positions filled by white applicants; and (3) the summer 2004 Adult Protective Investigator position filled by Karen Butler.[27]

The Clerk shall withhold the entry of final judgment pending resolution of the Plaintiff's remaining claim.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 6th day of June, 2008.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

---

[27]The effect of this ruling would establish Ausby's measure of damages, (assuming she proves liability), as the differential between the compensation she received up to the date of her termination and what her compensation would have been up to that date had she received one of the five positions in question.

28